# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: WIND N' WAVE,

*Debtor,*

_____

NORTH SPORTS, INC.; SALOMON
NORTH AMERICA; NITRO; LAW
OFFICES OF DAVID B. BLOOM, APC,

*Appellants,*

v.

NANCY KNUPFER, Chapter 7
Trustee,

*Appellee.*

No. 05-56254

BAP No.
CC-04-01462-
BKMa

ORDER AND
AMENDED
OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Marlar, Klein, and Brandt, Bankruptcy Judges, Presiding

Argued and Submitted
June 6, 2007—Pasadena, California

Filed November 1, 2007
Amended December 3, 2007

Before: Cynthia Holcomb Hall and Consuelo M. Callahan,
Circuit Judges, and Lyle E. Strom,* Senior District Judge.

Opinion by Judge Hall

_____

*The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

15501

## COUNSEL

James E. Adler, Law Offices of David B. Bloom, Los Angeles, California, for the appellants.

Eric P. Israel and Frank X. Ruggier, Danning, Gill, Diamond & Kollitz, Los Angeles, California, for the appellee.

---

## ORDER

The opinion filed November 1, 2007, is hereby superseded by the amended opinion below.

---

## OPINION

HALL, Circuit Judge:

Pursuant to Bankruptcy Code Section 503(b)(4),[1] Appellant creditors petitioned the bankruptcy court to recover legal fees incurred in connection with filing an involuntary Chapter 7 petition against the debtor. The bankruptcy court denied the fees, but the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") reversed, ruling that the creditors' attorneys were eligible under Section 503(b)(4) for compensation for their services in connection with the involuntary petition. The trustee's appeal of that decision was voluntarily dismissed. The instant appeal is from the BAP's subsequent order denying the creditors' motion for fees on appeal. The creditors argue that Section 503(b)(4) entitles them to attorney's fees for the successful appeal of the lower court's decision. We agree, and hold that it was error for the BAP to deny the fee motion without explaining that the denial was without prejudice to filing the appropriate Section 503(b)(4) fee request in the bankruptcy court.

28 U.S.C. § 158(d) grants us jurisdiction to hear this appeal. We VACATE the BAP's denial of the fee award and

---

[1] Unless otherwise noted, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330.

REMAND with instructions to clarify that the BAP's denial of the fee request is without prejudice to the creditors seeking a Section 503(b)(4) award from the bankruptcy court in compliance with proper procedures.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

In December 1999, Salomon North America, Inc., North Sports, Inc., and NITRO (collectively the "Petitioning Creditors") filed an involuntary Chapter 7 petition against the debtor, Wind N' Wave. An Order for Relief was entered by the Bankruptcy Court in March of the next year, and a Trustee was appointed. In April 2000, the attorneys for Petitioning Creditors, the Law Offices of David Bloom, filed an application for payment of their fees under Section 503(b)(4) of the Bankruptcy Code. The bankruptcy court denied the request. It declined to follow the Ninth Circuit BAP's opinion in *In re Sedona Institute*, 220 B.R. 74 (9th Cir. BAP 1998) and held that a creditor was not entitled to attorney's fees under Section 503(b)(4) when it has not incurred an allowable expense under Section 503(b)(3).

The Petitioning Creditors appealed to the Ninth Circuit BAP. The BAP, reversing the Bankruptcy Court's decision, held that *Sedona* was controlling and that "an independent allowable expense claim under [§ 503](b)(3) is not a prerequisite to an award of reasonable fees under § 503(b)(4)." *In re Wind N' Wave*, 328 B.R. at 183 (quoting *Sedona*, 220 B.R. at 81). The BAP remanded to the lower court to determine appropriate fees. *Id.* at 180-83. In a motion decided a month later, the BAP summarily denied the creditors' request to have the BAP award fees incurred in the BAP appeal; it did not explain that its decision was without prejudice to the creditors

---

[2]For a more in-depth discussion of the facts of this litigation, see the BAP's decision, *In Re: Wind N' Wave*, 328 B.R. 176, 177-79 (9th Cir. BAP 2005).

filing a fee application in the bankruptcy court. The creditors now seek the attorney's fees incurred in appealing the fee award to the BAP, as well as their fees and costs incurred in bringing the instant appeal.

## DISCUSSION

Though this court generally reviews BAP decisions *de novo*, *In re Am. Wagering, Inc.*, 465 F.3d 1048, 1050-51 (9th Cir. 2006), a BAP's finding regarding an entity's eligibility for attorney's fees is reviewed for abuse of discretion, *In re Del Mission*, 98 F.3d 1147, 1152 (9th Cir. 1996). An erroneous interpretation of a statute is an abuse of discretion, *see id.*, *Koon v. United States*, 518 U.S 81, 100 (1996), and we review *de novo* questions of law presented by a BAP's statutory construction. *See In re Nucorp Energy*, 764 F.2d 655, 657 (9th Cir. 1985); *In re Sedona*, 220 B.R. at 77.

*I. Section 503(b)(4)*

[1] This appeal presents an issue of first impression and turns on the interpretation of Bankruptcy Code Section 503(b)(4), which governs compensation for creditors' attorneys in bankruptcy cases. Section 503 is entitled "Allowance of administrative expenses" and subsection (b) provides for certain priority expenses to be paid out of the debtor's estate. Section 503(b)(3)(A), in combination with 503(b)(4), grants creditors costs incurred in connection with filing an involuntary bankruptcy petition. *See* 11 U.S.C. §§ 503(b)(3)(A); 503(b)(4). Subsection (b)(4) specifically allows compensation for services rendered by a creditor's attorney, and sets forth compensation standards that mirror those governing fee awards for debtors' attorneys under Section 330(a) of the Bankruptcy Code.

The statute is silent regarding expenses incurred by a creditor in appealing or defending a lower court's award or denial

of fees.[3] However, we do not find, as respondents urge us to, that statutory silence forecloses a fee award here. Along with other circuits, we have granted compensation for litigation over a fee award under fee shifting statutes even when those statutes did not expressly allow for it. *See* , *e.g.*, *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1126 (9th Cir. 1981) (holding that "42 U.S.C. § 1988 authorizes the grant of attorneys fees for services on appeal" though statute does not specifically so provide) (relying on *Hutto v. Finney*, 437 U.S. 678, 693, 700 (1978)); *Manhart v. Los Angeles Dep't of Water & Power*, 652 F.2d 904, 909 (9th Cir. 1981) (holding that plaintiffs are entitled to attorney's fees for time spent litigating the fees issue on appeal under Title VII's attorney's fee provision) (citing *Williams v. Alioto*, 625 F.2d 845, 849-50 (9th Cir. 1980)); *Hairston v. R & R Apartments*, 510 F.2d 1090, 1093 (7th Cir. 1975) (remanding for fees for services performed on appeal under the attorney's fees provision of the Fair Housing Act (42 U.S.C. § 3612(c)), which only allows for "reasonable attorney fees in the case of a prevailing plaintiff"); *Prandini v. National Tea Co.*, 585 F.2d 47, 52-53 (3d Cir. 1978) ("[A]ttorneys are entitled to be compensated for time spent successfully appealing the first fee award" under Title VII).

---

[3]Section 503(b)(4) reads in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, . . . including
>
> . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under [503(b)(3)], based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. 503(b)(4).

We have applied the logic from these cases in the bank-ruptcy context and held that, in certain situations, debtors' attorneys are entitled to compensation from the bankruptcy estate for fee award preparation and litigation, notwithstand-ing statutory silence on the subject. *See In re Smith*, 317 F.3d 918, 928 (9th Cir. 2002), *abrogated on other grounds by Lamie v. United States Tr.*, 540 U.S. 526, 531-39 (2004); *Nucorp*, 764 F.2d 655, 660-63. The same rationale applies in the instant case, and leads us to conclude that the BAP erred by not clarifying that its action in denying creditors' motion for fees incurred on appeal was without prejudice to Petition-ing Creditors filing the appropriate application under Section 503(b)(4) in the bankruptcy court pursuant to proper proce-dures.[4]

*II.    Nucorp and Smith*

**[2]** In *In re Nucorp Energy*, we held that the bankruptcy court erred in concluding that services related to the prepara-tion and presentation of attorney fee applications were not compensable under Section 330(a). The bankruptcy court had awarded debtor's counsel compensation and reimbursements in the full amounts requested, with the exception of fees incurred in preparing the fee applications. The court reasoned that "time devoted to fee application preparation should not be compensable because such efforts benefit only the law firm and not the estate." *Nucorp*, 764 F.2d at 657.

**[3]** We disagreed, and reversed, holding that a fee award was necessary to adequately compensate bankruptcy counsel. Focusing on the language of the statute, which provides that counsel be compensated "based on the time, the nature, the extent, and the value of the services and the cost of compara-ble services [in non-bankruptcy cases]," *id.* at 657, and citing legislative history, we explained that the purpose of Section

---

[4]Federal Rules of Bankruptcy Procedure 2002(a)(6) and 2016(a) explain the proper procedures for filing a fee application.

330(a) was "to ensure adequate compensation for bankruptcy attorneys so that highly qualified specialists would not be forced to abandon the practice of bankruptcy law in favor of more remunerative kinds of legal work." *Id.* at 658. Accordingly, we found that it was both inconsistent with the policy of the Bankruptcy Reform Act and "fundamentally inequitable" to demand that counsel prepare and present extensive fee applications and yet simultaneously "deny[ ] compensation for the efforts necessary to comply with those requirements." *Id.* at 659. Moreover, in dicta, we stressed that litigation over a fee award should also be compensable, otherwise fee awards would be diluted: "If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased." *Id*. at 660 (quoting *Prandini*, 585 F.2d at 52-53). Dilution is "precisely the result that statutory fee award provisions are designed to prevent." *Id*. at 661.

In *In re Smith,* 317 F.3d 918 (9th Cir. 2002), we again endorsed the anti-dilution rationale and applied it in a case involving litigation over a fee award. In *Smith*, the debtor challenged fees awarded to attorneys for services arising out of the successful defense of the initial fee award. *Id*. at 927. Relying on *Nucorp*, we affirmed the award. *Id*. at 928-29. While recognizing that Section 330(a) was silent as to the issue of compensation for litigation of fee applications, we noted that *Nucorp's* dicta regarding dilution suggested that compensation for time and expenses spent litigating a fee application may be appropriate. *Id.* (citing *Nucorp*, 764 F.2d at 660-61).

**[4]** We also acknowledged, though, that we had previously reached a contrary result in *In re Riverside-Linden,* 945 F.2d 320 (9th Cir. 1991). In that case, we declined to overturn the BAP's denial of attorney's fees for unsuccessful litigation over a fee award. We expressed concern that compensating unsuccessful litigation over fee applications might lead to

frivolous fee requests, and accordingly refused to adopt a *per se* rule that all litigation over fee awards should be compensated. However, *Riverside-Linden* left open the question of whether such litigation "under some other set of circumstances may be found necessary within the meaning Section 330(a)." *Id*. at 323. We addressed this inquiry a decade later in *Smith*, and held that recovery of legal fees for litigation over a fee application was appropriate if two factors were present: 1) the services for which compensation is sought satisfy the requirements of 330(a), and 2) the case "exemplifies a 'set of circumstances' where the time and expense incurred by the litigation is 'necessary.' " 317 F.3d at 928. We held that the *Smith* attorneys met this standard and affirmed the district court's award of fees in that case.

[5] We read these three cases together to stand for the proposition that, where a creditor receives attorney's fees under Section 503(b)(4), the time and expenses devoted to securing the attorney's fee award are also compensable if the *Smith* test is met. We believe that this holding is necessary because of the risk of dilution expressed in *Nucorp,* and is consistent with our holdings in *Smith* and *Riverside-Linden.*

We recognize that *Nucorp, Smith*, and *Riverside-Linden* dealt with Section 330(a) of the Bankruptcy Code—which addresses compensation for debtor's attorneys—while the instant case falls under Section 503(b)(4), which governs compensation for creditors' attorneys. We do not find that this distinction affects our holding. Section 503(b)(4) states that the court shall allow "reasonable compensation" for services rendered by a creditor's attorney "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title." 11 U.S.C. § 503(b)(4). This language was adopted as part of the Bankruptcy Reform Act of 1978, and is nearly identical to the language used in that Act to compensate officers under Section 330(a).[5] *See* Pub. L. 95-598 (allowing under Section

---

[5]With the very minor exception that Section 330(a) referred to the "value of the services" when it was enacted whereas Section 503(b)(4)

330(a)(1) an award of reasonable compensation for debtor's attorneys "based on the time, the nature, the extent, and the value of the services, and the cost of comparable services other than in a case under this title").

It is a " 'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning.' " *Dep't of Revenue of Ore. v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994) (quoting *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986)), and we see no reason to depart from that maxim in this case. Indeed, Congress took pains to ensure that the standards for compensation embedded in 330(a) and 503(b)(4) were indistinguishable; in enacting 503(b)(4), the Senate specifically deleted language that would have provided different criteria for compensating debtors and creditors. *See* S. Rep. No. 95-989 (1978) ("Section 503(b)(4) of the House amendment conforms to the provision contained in H.R. 8200 as passed by the House and deletes language contained in the Senate amendment providing a different standard of compensation under section 330 of that amendment.").

Respondents attempt to distinguish between Sections 330(a) and 503(b)(4) by noting that Section 330(a) explicitly provides for compensation for fee application preparation, *see* 11 U.S.C. § 330(a)(6), and disallows compensation for services not reasonably likely to benefit the debtor's estate or necessary for the administration of the case, *see* 11 U.S.C. 330(a)(4), whereas Section 503(b)(4) has no such provisions. We acknowledge that the statutes differ slightly (with Section 330(a) imposing more requirements on debtors than 503(b)(4) places on creditors) but maintain that the relevant provisions —those governing calculation of the attorney's fees—were identical when the Bankruptcy Reform Act of 1978 was

refers to the "value of such services." *See* Pub. L. 95-598; 11 U.S.C. § 503(b)(4).

enacted,[6] and that Congress intended both creditors' and debt-ors' attorneys to be compensated in a manner similar to attorneys working in other fields.

In *Nucorp*, we read the language in Section 330(a) (as enacted) as indicating Congress's intent to avoid dilution of the effective rate for bankruptcy counsel that would result if fees incurred in successfully obtaining or defending an award were not compensated, at least where such expenses are typically awarded in the non-bankruptcy context. *Nucorp*, 764 F.2d at 659-61. In reaching that interpretation, we focused specifically on the following phrase from Section 330(a) as it read at the time: "[Debtor's attorneys should be compensated] based on the time, the nature, the extent, and the value of the services and the cost of comparable services other than in a case under this title." Because this language is effectively the same as the current language in Section 503(b)(4), we find it reasonable to apply the same rationale to cases involving the latter statute.

We are not alone in finding that the anti-dilution principle applies with equal force to creditors and debtors. In *In re Hers Cosmetics Corp.*, 114 B.R. 240 (C.D. Cal. Bankr. 1990), the creditors' attorneys sought reimbursement under Section 503(b)(4) for expenses incurred during the successful defense of a lower court's fee award. The court followed the reasoning of *Nucorp* and awarded the fees. Noting that "Congress made the decision under § 330 and § 503(b)(4) to reimburse [both creditors' and debtors'] attorneys fees from the estate" on a priority basis, the court held that "the underlying purpose of [both Sections 330(a) and 503(b)(4)] would be subverted if the fee award could be diluted through the appeal process." *Id*. at 244; *In re On Tour*, 276 B.R. 407, 418 (D. Md. Bankr.

---

[6]While Section 503(b)(4) has remained largely unchanged since 1978, Section 330(a) was expanded in 1994. The portion addressing reasonableness of compensation now includes more detail regarding each factor that a court is to consider. *See* 11 U.S.C. § 330(a)).

2002) ("This court had taken the majority position set out in cases such as [*Nucorp*] . . . that bankruptcy counsel should be compensated for preparing and defending fee applications. . . . This court sees no basis for applying a different rule when applying for compensation under 11 U.S.C. § 503(b) than used when applying for compensation under 11 U.S.C. § 330."); *see also In re Celotex*, 227 F.3d 1336, 1341 (11th Cir. 2000) ("Section 503(b)(4) expressly provides that allowable attorney compensation should be 'based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title . . . ' This standard is identical to the standard in § 330(a)(1) which provides for attorney's fees for counsel to the bankruptcy trustee.") (internal citations omitted); *In re Sedona*, 220 B.R. 74, 78 (9th Cir. BAP 1998) ("It is important to observe the integration in section 503(b)(4) of the standards of section 330(a)(1) applicable to professional services rendered to the trustee for which compensation is sought. The legislative comments to section 330 are surely applicable here as well.") (quoting 4-503 Collier on Bankruptcy 15th Ed. 503.11).

**[6]** In sum, Congress enacted Sections 330(a) and 503(b)(4) of the Bankruptcy Code at the same time, chose the same language for the two sections, and intended that both debtors and creditors be compensated on a priority basis at levels reflecting fees in other fields. Thus, we see no reason why the common sense principles of *Nucorp*, *Smith*, and *Riverside-Linden* should not apply in cases involving creditors as well as debtors. Our holding that creditors who receive compensation under 503(b)(4) should also be compensated for costs incurred in litigating a fee award, so long as the services meet the Section 503(b)(4) requirements and the case "exemplifies a 'set of circumstances' where litigation was 'necessary,' " is not only consistent with our analysis of compensation for debtor's attorneys in *Smith* and *Riverside-Linden*, but is necessary to prevent the dilution that would result if creditors' attorneys were forced to absorb the time devoted to success-

fully litigating a fee award—an outcome that would be contrary to Congressional intent against fee award dilution.

### III.  Application to the Instant Case

Here, the BAP held that the attorneys for Petitioning Creditors were eligible for an award of compensation under Section 503(b)(4). Therefore, the litigation over the award is also compensable so long as the services for which compensation are sought meet the requirements of Section 503(b)(4), and the case "exemplif[ies] a 'set of circumstances' where the time and expense incurred by the litigation is 'necessary' " per *Smith.*

[7] That standard is easily met here. The compensation that Petitioning Creditors seek meets the statutory requirements because the creditors demonstrated an allowable expense under 503(b)(3) (specifically, filing an involuntary petition under 503(b)(3)(A)), and there is no dispute that the amount of compensation they are pursuing for their appellate work is reasonable. *See* 11 U.S.C. § 503(b)(4) (allowing for "reasonable compensation for professional services rendered by an attorney . . . of an entity whose expense is allowable under [503(b)(3)]").

[8] Further, the appellate litigation in this case was necessary because, like the attorneys in *Smith*, the attorneys for Petitioning Creditors did not frivolously appeal the lower court's decision merely to acquire litigation fees.[7] To the contrary, the fact that Petitioning Creditors were erroneously denied their fee award in the bankruptcy court— notwithstanding Ninth Circuit precedent urging otherwise—

---

[7]The respondents attempt to assert that "willfully deciding . . . to prosecute an appeal" of a denial of a fee award, as is the case here, is somehow less worthy of compensation than defending a fee award, as was the case in *Smith*. We see no distinction between pursuit or defense for the purposes of determining whether litigation was "necessary."

suggests that the litigation expenses incurred on appeal were unavoidable, as appeal to the BAP was the only avenue through which the creditors could receive their due compensation. Thus, because the BAP determined that the attorneys for Petitioning Creditors were entitled to an award of compensation under Section 503(b)(4), and because the litigation leading up that decision satisfies the *Smith* standard, we hold that the BAP erred by not clarifying that its action in denying the motion for fees was without prejudice to Petitioning Creditors making the appropriate application under Section 503(b)(4) in the bankruptcy court in compliance with 11 U.S.C. § 503(b) and Federal Rules of Bankruptcy Procedure 2002(a)(6) and 2016(a). While we recognize that this holding may result in the drawing down of an already limited estate, that cannot deter us from the correct result.

## Conclusion

The BAP erred in summarily denying Petitioning Creditors compensation for services arising out of the successful appeal of the lower court's denial of a fee award. We VACATE the BAP's denial of the fee motion and REMAND with instructions to clarify that the BAP's denial of the motion is without prejudice to Petitioning Creditors seeking a Section 503(b)(4) award from the bankruptcy court pursuant to proper procedures.